**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Clayton Ames and Andrea Nestor, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:24-cv-00729 |
| | ) | |
| v. | ) | Hon. Jeremy C. Daniel |
| | ) | |
| ArentFox Schiff, | ) | Magistrate Judge Young B. Kim |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **DEFENDANT'S MOTION FOR SANCTIONS**

Defendant ArentFox Schiff ("Defendant"), by and through its undersigned counsel, hereby moves for sanctions against Plaintiffs Clayton Ames ("Ames") and Andrea Nestor ("Nestor") (collectively "Plaintiffs") pursuant to Federal Rules of Civil Procedure 26, 37, and this Court's inherent authority to manage judicial proceedings.

## **INTRODUCTION**

In this motion, Defendant seeks sanctions for spoliation and misconduct in discovery. Plaintiffs admit that they routinely destroyed emails and text messages with witnesses and that they discarded their mobile phones during the pendency of this litigation. Plaintiffs' bad faith destruction of potentially probative evidence impedes Defendant's ability to defend this case, and is extremely prejudicial to Defendant.

Plaintiffs are hardware technicians who worked for a consulting firm that provided primarily computer hardware and conference room support to Defendant and its predecessor law firm for more than 20 years. After a merger, the firm eliminated the use of consultants to perform hardware and conference room support and terminated the firm's contract with Ames's company, CSA Consulting, Inc. ("CSA") ended in April 2023. After Plaintiffs were informed that the CSA

contract would be terminated, they applied for the positions of Level 2 ("L2") and Level 3 ("L3") Technology Support Analysts, positions that had not existed at the firm's predecessor (Schiff Hardin LLP) and were new to the firm's Chicago office. More qualified applicants were hired for those positions, and Plaintiffs filed this lawsuit claiming that the Firm discriminated against them on the basis of their age.

In addition to routinely destroying emails and text messages with witnesses and discarding their mobile phones, Plaintiffs and their counsel misled Defendants and made outright misrepresentations about the existence and contents of documents. Plaintiffs produced 296 pages of documents in response to Defendant's initial discovery requests, but withheld thousands of pages of responsive documents, including documents this Court ordered them to produce, and deprived Defendant of the ability to use those documents in the depositions of Plaintiffs and at least six key witnesses. The vast majority of the remaining documents were produced after Plaintiffs learned that Defendant had prepared a motion to compel. It appears that, but for Defendant's persistence in demanding compliance with the rules governing discovery, these documents would never have been produced.

At the time of filing, Plaintiffs have still not confirmed that they have produced all documents in their possession, and they continue to dribble out documents based on specific requests for missing items in a misplaced attempt to place the burden of their compliance with discovery on Defendant. This Court should impose sanctions on Plaintiffs for spoliation and for their egregious misconduct in the discovery process.

I. <u>Plaintiffs Failed to Preserve and Actively Destroyed Documents</u>

    A. **Plaintiffs Ignored Their Duty to Preserve and Destroyed Relevant Evidence**

Parties have a duty to preserve evidence arising "at the onset of the litigation or once litigation is reasonably anticipated." *Pas v. Bd. of Regents*, 664 F. Supp. 3d 893, 905 (E.D. Wis. 2023) (cleaned up). "Federal courts across the country have recognized that a plaintiff's duty to preserve is more often triggered before litigation commences, in large part because plaintiffs control the timing of the litigation." *Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 354 (N.D. Ill. 2016).

In this case, it is undisputed that Plaintiffs destroyed relevant evidence after they decided to sue AFS. Ames and Nestor discussed retaining counsel on April 26, 2023,[1] and actually retained counsel in September 2023.[2] (Exhibit 1, Deposition of Clayton Ames ("Ames Dep."), 6:16-21). Both Plaintiffs admit that after they retained counsel and filed this lawsuit, they routinely deleted relevant documents.

On June 14, 2024, Defendant issued identical sets of Requests for Production ("RFP") to the Plaintiffs. (Exhibits 2 & 3). Among other items, Defendants requested documents relating to communications between the Plaintiffs relating to their claims, (*id.*, RFP 4); communications between Plaintiffs and current/former employees, contractors, or partners of Defendant relating to their claims, (*id.*, RFP 5); documents relating to the damages claimed in this lawsuit, (*id.*, RFP 8); and documents relating to Plaintiffs' mitigation efforts, (*id.*, RFP 11).

---

[1] Nestor testified during her deposition that she and Ames were discussing filing a lawsuit on April 26, 2023, and produced text messages noting the same. (Exhibit 6, May 7, 2025 Continued Deposition of Andrea Nestor ("Nestor Dep. II"), 301:17-22, Ex. A).

[2] Plaintiffs submitted charges of discrimination to the EEOC on or about October 13, 2023, and filed this lawsuit on January 26, 2024. *See generally* Plaintiffs' Complaint and exhibits thereto, Dkt. 1, et al.

Plaintiffs produced no documents responsive to RFP 4 (communications with each other). The only communications identified in Plaintiffs' initial written response to RFP 5 were 36 pages of emails wishing Plaintiffs well after they sent emails to current and former firm partners and employees announcing their contract with Defendant was not renewed.[3] (Exhibits 4 & 5). Plaintiffs objected to RFP 8 (damages) and RFP 11 (mitigation), and noted that "investigation continues." (*Id.*). Following a hearing with the parties, this Court issued an Order on November 1, 2024 stating, "Plaintiffs must amend their response to REQ No. 4 and produce all responsive ESI." (Dkt. 27 at 6). On November 14, 2024, Plaintiffs supplemented their responses to RFP 4, and both stated, "Plaintiff has not located emails or text messages between [themselves], nor does she [he] possess social media posts, referring or relating to the subject matter of her [his] allegations and claims in this matter." (Exhibits 7 & 8).

In their depositions, both Plaintiffs testified they routinely deleted and failed to preserve documents. Ames testified "I constantly delete stuff off my phone," and "I destroy my texts weekly." (Ames Dep., 84:22-24, 86:3-6). He also testified he switched phones approximately three months before his March 2025 deposition and did nothing to preserve information from that phone. (*Id.*, 280:7-20). Ames additionally testified he saved no documents pertaining to his alleged job search efforts. (*Id.*, 103:15-19).

Nestor testified that she deletes emails when she no longer needs them and may have deleted emails relating to this matter, but she does not know what she deleted, or of any way to determine what was deleted. (Nestor Dep. II, 283:20-285:5). Nestor further testified that she replaced her smartphone in December 2023, and did not back up the contents of that device. (*Id.*, 285:14-17, 289:13-23). Though Nestor testified she had text messages and emails with Ames, and

---

[3] Some of these emails were sent to Plaintiffs' work email addresses, but appear to have been forwarded to Ames' personal Gmail account (as many say "forwarded message" or have "gmail" in the header).

4

that she provided them to her attorney, she was not sure if they were produced to Defendant. (Nestor Dep. II, 293:15-294:22; 305:16-307:14; Exhibit 9, March 11, 2025 Continued Deposition of Andrea Nestor ("Nestor Dep. I"), 21:16-22:4). On May 16 & 20, 2025, Defendant requested that Plaintiffs' counsel identify text messages produced by Nestor. (Exhibit 10). On May 22, 2025, he responded that he would do so but it "might take some time." (Exhibit 11). To this day, it is unclear if Nestor's attorney has produced all documents that she provided to him.

On February 26, 2025, in anticipation of Plaintiffs' depositions, Defendant's counsel emailed Plaintiffs' counsel asking him to confirm that Plaintiffs had searched their phones and produced all responsive information, (Exhibit 12), Plaintiffs' counsel did not respond.

At their depositions on March 11 and 14, 2025, Plaintiffs testified they deleted and did not preserve text messages or emails, including correspondence with Will Owens, who was hired for the Level 3 Tech Support position Ames sought, and who has provided Plaintiffs with a declaration drafted by Ames. (Ames Dep., 192:2-17; 279:18–22). Ames testified that his text messages with others had "absolutely nothing relevant with the lawsuit." However, that statement is demonstrably false, because some of the individuals with whom Ames has texted have produced their correspondence with Ames about the lawsuit and related matters. For example, Defendant has produced text messages between Ames and a current firm employee [L.H.] during discovery, in which the employee identified job openings for which Ames could apply, and Ames's replies indicating he was either not interested or not available to work. For example, Ames said he was not sure if he wanted to go downtown again and work for a law firm and finally said "I have something going on for the next six months so I can't really start a new job right now." (Ames Dep., 92:21-93:1, Ex. 9 at AFS0002956-57). This supports Defendant's defense that Ames was not mitigating his damages. Similarly, Will Owens produced text messages with Ames discussing

5

the lawsuit and other information relevant to this matter. (*See* Exhibit 13, Deposition of Will Owens ("Owens Dep."), pp.15-40, Ex. 2).

There is no question that Plaintiffs engaged in spoliation of evidence. By their own admission, they routinely destroyed ESI that was relevant to their claims. They regularly deleted emails and text messages and disposed of smart phones without backing up those devices. Ames communicated with multiple witnesses including former firm employees Michelle Zavislak, Dina Funches and Will Owens and even prepared affidavits for them to sign. Yet he testified he is unsure if he kept drafts, has not produced any drafts. (Ames Dep., 196:8-20, 198:6-15, 201:17-23). These communications with witnesses about providing statements for the lawsuit are unquestionably relevant and responsive to Defendant's requests. Plaintiffs' destruction of relevant evidence impaired Defendant's ability to defend this lawsuit and resulted in prejudice. Further, Plaintiffs' testimony that they regularly deleted communications means there is no way to know what other relevant documents existed. Plaintiffs may have communicated with each other or with other witnesses about their allegations, their job search efforts and other relevant matters, but Defendant will never be able to discover or use that information.

**B. This Court Should Impose Severe Sanctions for Plaintiffs' Bad Faith Destruction of Evidence**

Rule 37(e) provides a remedy for parties' failure to take reasonable steps to preserve relevant ESI. *DR Distribs, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 956 (N.D. Ill. 2021). Assessing spoliation requires a two-step analysis. Spoliation occurs "where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). Curative sanctions can be awarded under Rule 37(e)(1) where there is prejudice, but more severe sanctions are appropriate under Rule 37(e)(2) when a party intentionally destroys evidence in bad faith. *Bracey*

*v. Grondin*, 712 F.3d 1012, 1018 (7th Cir. 2013). Bad-faith destruction occurs when a party destroys evidence "for the purpose of hiding adverse information." *Id.* at 1019 (quotation omitted).

Ames' own deposition testimony establishes that Plaintiffs acted in bad faith and attempted to hide their spoliation. Ames unequivocally testified "I don't have any texts from [L.H.]." (Ames Dep., 89:7–12). That was untrue, as Ames exchanged texts with L.H. regularly, and Defendant produced those text messages from L.H.'s phone. L.H.'s text messages invited Ames to apply for jobs, but Ames made excuses and finally told L.H. that he had something going on for the next six months, establishing that (contrary to his testimony) he made no effort to mitigate his damages. Ames also stated any text messages he deleted, including those with Owens, whose affidavit Ames drafted for use in this case, had "absolutely nothing relevant with the lawsuit." (*Id.*, 192:2-17; 279:18–22). That statement was also false. Owens produced text messages with Ames in which they discussed the lawsuit. (Owens Dep., Ex 2). Among other things, Owens and Ames discussed Ames' request that Owens sign an affidavit in support of Plaintiffs' claims. (*See* Owens Dep., pp.15-40, Ex. 2). Ames knew full well that his text messages with Owens related to this litigation. Ames and Nestor both destroyed almost all of their texts with each other, and it is very likely that those communications contained information about the litigation and their animus against Defendant.[4] While they destroyed those texts messages, one of the few items Plaintiffs elected to preserve was a text chain in which they discussed the Law360 news report regarding their lawsuit. (*See* Nestor Dep. II, Ex. A). They also preserved approximately 30 pages of complimentary emails from former co-workers that were sent to them in or around April 2023. (Exhibit 14). This Court

---

[4] For example, Nestor and Ames' text messages show they referred to their supervisor as an "ass." (Nestor Dep. II, 302:2-15, Exhibit A).

7

should conclude that Plaintiffs selectively saved evidence they thought would be helpful, but destroyed the remaining evidence in bad faith.

## II. Plaintiffs Acted Dishonestly and Deceptively Throughout Discovery, Including In Depositions

### A. Plaintiffs Hid Responsive Documents And Misled Defendant

As noted above, Defendant served discovery requests on Plaintiffs on June 14, 2024. This Court required Plaintiffs to produce "all responsive ESI" on November 1, 2024. (Dkt. 27 at 6). On November 14, 2024, Plaintiffs responded they had not located any text messages or emails responsive to Defendant's request. (Exhibits 7 & 8). When Defendant's counsel inquired to confirm that Plaintiffs had searched for ESI and produced all responsive documents on February 26, 2025, their counsel did not respond.

Plaintiffs testified during their March 11 and 14, 2025 depositions that they had destroyed communications with each other and with others about this lawsuit. (*See* Ames Dep., 192:2-17, 279:18-22; Nestor Dep. II, 283:20-285:5). Ames testified he did not keep any job search documents. (Ames Dep., 103:15-19). Nestor testified she had some responsive documents, but did not know if they were provided to Defendant. (Nestor Dep. II, 293:15-294:22; 305:16-307:14; Nestor Dep. I, 21:16-22:4). Further, to the extent Plaintiffs testified information "may" exist, Defendant's counsel *repeatedly* requested Plaintiffs' counsel provide that information. (*See* Exhibit 15).

On April 10, 2025, the parties participated in a Rule 37 conference, during which Defendant's counsel stated that they had prepared a motion to compel based on Plaintiffs' failure to cooperate in discovery. At the time of that call, Plaintiffs had produced around 350 pages of documents. During the call, Plaintiffs' counsel finally agreed to provide additional documents.

8

Between April 18 and 21, 2025, Plaintiffs' counsel produced more than 700 pages of additional documents.

On April 21, 2025, Plaintiffs' counsel emailed Defendant's counsel and made the following representations:

- "All text messages between Plaintiffs regarding allegations in the Complaint have been produced,"

- "Mr. Ames has produced all documents requested regarding CSA, including all emails and texts 'concerning the subject matter of (his) allegations and claims in this matter,'"

- "Ms. Nestor has searched for and produced or is not in possession of any texts and/or emails 'concerning the subject matter of (her) allegations and claims in this matter,'" and

- "Neither Plaintiff has deleted emails/text messages that are 'concerning the subject matter of (their allegations and claims in this matter.'"

(Exhibit 16).

Despite these representations, Plaintiffs subsequently produced additional documents within each bulleted category. On April 28, 2025, Plaintiffs produced more than 90 pages of text messages dating back to 2023, despite their representation a week prior that all documents were already produced. (Exhibit 17). Since then, Plaintiffs produced hundreds of additional pages of documents, including tax and business records of CSA and other documents specifically requested by Defendant. (*See* Exhibit 18). These volleys of production have been ongoing. On May 7, 2025, <u>during Nestor's *continued* deposition</u>, Plaintiffs sent Defendant 78 additional pages of documents pertaining to Nestor's subsequent employment and communication with current/former employees.[5] Plaintiffs' counsel thereafter insisted Defendant's counsel review the documents over a lunch break in order to complete Nestor's deposition that day. All told, Plaintiffs produced

---

[5] Nestor's continued deposition began at 10:00 a.m. on May 7, 2025, and had roughly 1.5 hours of total time remaining. Plaintiffs' counsel's assistant began sending additional documents to Defendant's counsel at 11:38 a.m. on May 7th.

approximately 1900 pages of documents after their depositions, and even then, only under threat of a motion to compel.[6]

### B. Plaintiffs Testified Dishonestly To Hide Documents From Defendant

At Plaintiffs' depositions, beyond describing their destruction of documents, *supra*, they testified they did not know of any written communications with each other, or anyone else, about this lawsuit.

With regards to current firm employee L.H., specifically, Ames testified unequivocally, and repeatedly that he had no text messages from L.H.: "absolutely not," "I deleted everything," "I don't have any texts from [L.H.]." (Ames Dep., 84:10–24, 88:21-23, 89:7-12). But this was not true. On April 28, 2025, a week after counsel stated, "Mr. Ames has produced all documents requested regarding CSA, including all emails and texts 'concerning the subject matter of (his) allegations and claims in this matter,'" Plaintiffs produced Ames' text messages with L.H. (Exhibit 16). And while Ames also testified he was "sure" no one had sent him text messages with job opportunities, (Ames Dep. 281:2-5), L.H. *repeatedly* texted Ames about job opportunities. In the same vein, Ames testified Stova Wong's testimony in this matter that Defendant offered him a job was "an absolute lie," but Ames' text messages to Owens (produced only by Owens but apparently destroyed by Ames) contradict his testimony: "I was offered Margarito's position but turned it down…." (Ames Dep. 291:6-9; Owens Dep., 38:8-11, Ex. 2).

When asked if he ever communicated with current or former employees about this lawsuit, Ames testified "[a]bsolutely nothing relevant with the lawsuit," and that "[t]here is no data concerning the lawsuit." (Ames Dep., 279:18-23, 280:19-20). Yet Ames' text messages with Owens show them communicating at length about Plaintiffs' claims. (*See* Owens Dep., 15-40, Ex.

---

[6] Plaintiffs have produced documents with non-consecutive Bates numbering and with some repetition or skipping of numbers, so this is an approximation based on those Bates numbers produced.

10

2). Further, Plaintiffs produced text messages with Dina Funches, and Michelle Zavislak, from whom they sought declarations, and text messages and emails with several other current/former employees of Defendant, including individuals named in their Rule 26 disclosures and an individual deposed in this lawsuit. Still, the text messages they produced only show snippets, not full conversations. For example, the text messages with Zavislak begin on March 31, 2025, and omit the apparent conversation prior to that date. (Exhibit 19). Likewise, the text messages between Plaintiffs produced show they were sent on April 21 & 26, 2023, "Jan. 30" of an unknown year, and then April 2, 2025, and, again, obviously omit messages both before and after those messages produced. (Nestor Dep. II, Ex. A; Exhibit 20).

Further, Nestor testified during her May 7, 2025 continued deposition that she replaced her smartphone in December 2023, after she filed a charge of discrimination and just before this lawsuit was filed, and did not back up any information from that phone. (Nestor Dep. II, 218:14-17, 289:13-23). Yet, <u>while she was testifying</u>, her counsel produced several text messages dating back to April 12, 2023. (Exhibit 21).

### C. This Court Should Impose Sanctions for Discovery Misconduct

"[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." Ramirez v. T&H Lemont, Inc., 845 F.3d 772, 776 (7th Cir. 2016). This includes ensuring that parties abide by their Rule 26 discovery obligations, including that they "stop and think" about their discovery responses and ensure they provide "all the information and documents available to him that are responsive to the discovery demand." *DR Distribs*, 513 F. Supp. 3d at 952 (quoting Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendments). Courts also ensure that parties properly and timely supplement or

11

correct discovery responses. *See* Fed. R. Civ. P. 37(c) (requiring sanctions for failing to comply with Rule 26(e)). Most importantly, it includes ensuring that parties act in good faith, follow court orders, and provide truthful statements, especially under oath. *See* Fed. R. Civ. P. 37(b); *Pas v. Bd. of Regents*, 664 F. Supp. 3d 893, 907-08 (E.D. Wis. 2023) (discussing sanctions for a dishonest testimony and conduct in discovery).

Dismissal of a case as a discovery sanction requires a preponderance of evidence that the party acted (or failed to act) "with a degree of culpability that exceeds simple inadvertence or mistake before it may choose dismissal as a sanction for discovery violations." *Ramirez*, 845 F.3d at 776, 778. Dismissal is appropriate where "the party's actions displayed willfulness, bad faith, or fault, and if dismissal would be a proportionate response to the circumstances." *Watkins v. Nielsen*, 405 F. App'x 42, 44 (7th Cir. 2010). "Fault" requires only "'extraordinarily poor judgment' or 'gross negligence' rather than mere 'mistake or carelessness.'" *Ramirez*, 845 F.3d at 776 (cleaned up).

Plaintiffs' antics were unjustifiable. Nearly all of Plaintiffs' late-produced documents date *well* before their depositions, and some back to even 2023. There is no legitimate explanation that would support Plaintiffs not knowing of their duty to preserve and produce these documents, nor is there any valid reason these indisputably relevant documents could not have been produced in August 2024, with Plaintiffs' initial discovery responses, or at any time before their depositions.

But Plaintiffs did not just destroy evidence and hide the ball—they time-and-again denied the ball ever existed. Plaintiffs' numerous false statements during their depositions, and throughout discovery generally, are nothing short of a willful and concerted effort to hide documents from Defendant. There is no benign explanation for their actions. Instead, the only reasonable conclusion is that Plaintiffs sought to convince Defendant that documents containing

negative information no longer exist when, in reality, they do. Plaintiffs had incentive to hide these documents because they weakened their claims. For example:

- Ames testified he had no texts whatsoever with L.H. But he had dozens of pages, including texts where he speaks to being unavailable for work, and turning away job opportunities, and

- Ames testified he had no correspondence with current/former employees about the lawsuit whatsoever. But Ames' texts with Owens discuss the lawsuit extensively and undercut his testimony about being offered employment by Defendant.

It is reasonable to believe that if Plaintiffs hid these unfavorable documents, more exist. However, the unfortunate truth is we will never know what additional information existed in Plaintiffs' communications, because they have regularly deleted their emails and text messages throughout this lawsuit.

There can be no question Plaintiffs' falsehoods and destruction had a material impact on this case. They have continually denied relevant ESI existed between themselves and others about their allegations. We now know it exists, or, at least, existed. Plaintiffs' dishonesty and destruction were unquestionably intended to influence Defendant's legal and discovery strategy and bolster their case. Defendants expended countless hours and incurred significant legal fees to obtain some, but not nearly all, of the information that should have been produced more than a year ago.

This is not a "better late than never" scenario; the harm has been done. An untold number of documents have been destroyed, and as to the remaining documents, Plaintiffs did not engage in any meaningful document production until more than five months after this Court *ordered* them to produce all responsive ESI, ten months after Defendant propounded its requests, sixteen months after they filed their lawsuit, and after eight depositions took place. Withholding these documents deprived Defendant of the opportunity to utilize them to develop its discovery and case strategy, prepare for depositions, and make other necessary litigation decisions and caused Defendant to incur extensive, unnecessary legal fees. The harm from this lost opportunity is beyond cure.

Plaintiffs' willful and egregious conduct warrant dismissal with prejudice. Throughout every stage of discovery, Plaintiffs willfully misled and lied to Defendants to stifle their access to information and documents. Plaintiffs repeatedly denied the existence of damaging documents, and generally failed to investigate or cooperate in discovery even after this Court ordered them to do so. As one court said, "Failure to reasonably investigate discovery responses destroys all semblance of candor …." *Pas v. Bd. of Regents*, 664 F. Supp. 3d 893, 912 (E.D. Wis. 2023).

Plaintiffs' deliberate misconduct during 16 months of litigation so far is not something that can be fixed by a "re-do" or monetary sanctions. Requiring Plaintiffs to provide the documents and information they should have provided long ago (to the extent it exists) will only result in additional time and expense for both parties. What's more, a monetary sanction would serve only to inform future litigants that such conduct is permissible so long as the culpable parties write a check. As Magistrate Judge Dinsmore of the Southern District of Indiana aptly said, "[t]ruthful discovery is too important to the entire civil justice system to allow Defendants to continue to debase the truth-finding processes of this Court with their continued presence before this tribunal." *Malibu Media, LLC v. Tashiro*, No. 1:13-cv-00205-WTL-MJD, 2015 U.S. Dist. LEXIS 64281, at *102-03 (S.D. Ind. May 18, 2015) (report and recommendation) (internal quotations omitted) adopted by 2015 U.S. Dist. LEXIS 75588 (S.D. Ind. June 11, 2015). The integrity of the judicial system and discovery process are important, and anything shy of dismissal would reward Plaintiffs' egregious conduct and signal to others such conduct is permissible.

## **REQUEST FOR RELIEF**

WHEREFORE, based on the foregoing, Defendant respectfully requests that the Court grant this motion and sanction Plaintiffs under Rules 26(g), 37(c), 37(e), and its inherent authority including:

14

    A. Dismissal of Plaintiffs' claims in their entirety with prejudice and award fees and costs to Defendant;

    B. Award Defendant its attorneys' fees and costs for preparing this motion; and

    C. Award Defendant its attorneys' fees and costs incurred in uncovering and responding to Plaintiffs' discovery misconduct.

In the alternative, should this Court determine dismissal is not appropriate, in addition to its attorneys' fees and costs, Defendant requests that this Court:

    A. Preclude Plaintiffs from presenting evidence obtained through third parties;

    B. Preclude Plaintiffs from recovering lost wages as a consequence for failing to preserve, and affirmatively hiding, documents relating to mitigation efforts;

    C. Preclude Plaintiffs from being awarded attorney's fees;

    D. Instruct any jury that documents not provided to Defendant should be presumed unfavorable to Plaintiffs; and

    E. All other relief this Court deems appropriate.

Dated: May 23, 2025

        Respectfully submitted,

**ARENTFOX SCHIFF**

By: /s/ Kathryn Montgomery Moran
Kathryn Montgomery Moran
J. Casey Leech
John T. Woodson
JACKSON LEWIS P.C.
150 N. Michigan Avenue
Suite 2500
Chicago, IL 60603
Tel: (312) 787-4949
Fax: (312) 787-4995
Kathryn.Moran@jacksonlewis.com
Casey.Leech@jacksonlewis.com
John.Woodson@jacksonlewis.com

Paula M. Ketcham
Ari Asher
paula.ketcham@afslaw.com
ari.asher@afslaw.com
ARENTFOX SCHIFF LLP
233 S. Wacker Dr., Suite 7100
Chicago, Illinois 60606
(312) 258-5500

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on May 23, 2025, she caused a true and correct copy of the foregoing *Defendant's Motion for Sanctions* to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.

/s/ *Kathryn Montgomery Moran*
One of Its Attorneys